## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | **DOCKET NUMBER** |
| VS. | § | **A-17-CR-287 - SS** |
| | § | |
| STEVEN LEE BACINO | § | |

### STEVEN LEE BACINO'S MEMORANDUM IN AID OF SENTENCING

Steven Lee Bacino, by and through his attorney of record, Samuel E. Bassett, files this

Memorandum in Aid of Sentencing for this cause set for sentencing on November 3, 2017.

### Introductory Statement

This is the story of a man who had great opportunity but chose to forever change his life

because he harbored deep dysfunction and acted out by living a a secretive life.  He chose to use

the internet to possess and view highly offensive images/videos of children engaged in sex acts.

This self destructive behavior evolved from a tortured relationship with his Dad, alcohol abuse

and selfishness.  In his own words, Steven writes:

> ". . .I am writing you with regards to the shame, disgrace and humiliation
> I feel regarding my despicable actions and current position I have put myself in . . .

> " . . .I now realize this is not a victimless crime and I will spend the rest of my
> life living with the regret and pain that accompany my transgressions.  I accept
> the role I have put myself in and will live with the consequences of my poor
> choices. . . "

(See **Exhibit A** – Attached for Steven's full letter). In his letter, Steven goes on to explain his

journey in life, including a poor relationship with his Dad and his habitual abuse of alcohol.

Steven clearly is not excusing his crime but instead revealing to this Court he understands there

1

are consequences for his criminal activity.

## Steven Bacino's Relevant Family History

Steven is the son of Jeffrey and Sheila Bacino, who met in Okinawa, Japan at a young age. Steven is the oldest of four children born to this marriage. *His siblings, his wife, his mother/father in law and his mother are aware of the charges and plea of guilty.* Both sides of his family have a military background with Steven's Dad serving in the U.S. Air Force and his maternal grandfather having served as a Drill Sergeant in the U.S. Marine Corps. Particularly in early childhood, Steven witnessed many difficult and sometimes violent interactions between his parents. He also reports that his Dad had an alcohol problem which contributed to a difficult and dysfunctional home environment. As his Dad gave up alcohol, the dysfunction continued and Steven learned of many other aspects of his parents' difficulties. Over the course of several years, Steven learned and observed conduct on the part of his Dad which included multiple infidelities. As he grew older, his way of trying to escape the difficult reality of a tortured family life was to stay busy and do various jobs to contribute financially. He paid for his own school expenses and eventually was admitted to Texas A&M University, going to school as well as holding a job during those years. He graduated with a Bachelor of Science from Texas A&M in 2006. With the help of his Uncle, Steven began to have opportunities in the financial industry. At the time, his Uncle was his strongest older, male role model. This came crashing down during the financial crisis of 2007-2008 when his Uncle was convicted of a Federal charge related to a worker's compensation scheme. Concurrently, Steven's parents divorced due to his Dad having another affair with a client. This caused a break in communication between Steven and his Dad

2

which continued until recently.  The pain of this relationship still affects Steven today.  **Three photos of Steven with his wife, mother, siblings and parents in law are attached Exhibit K).**

Steven decided to relocate to the Austin area following his parents' divorce.  He began working in the financial industry in Austin, working to build a career in real estate finance.  After four years, he gained employment with Summit Hotel Properties, where he worked up until the time he was terminated due to his criminal conduct.  During these years, Steven was abusing alcohol on a regular basis.  The premature death of his Uncle (who was 56) also exacerbated Steven's issues and his alcohol abuse became worse.  Steven was dealing with deep issues that remained to be fully addressed.  In 2015, he turned to the viewing of illicit pornography as another means to escape his demons.  Many things looked good from the outside, but there was a different picture developing in secret with Steven.

Steven's mother, **Sheila Bacino**, writes about Steven:

> " . . . I am writing to you with a broken heart as my worst nightmare come true. I have been left dumfounded by what he has done and the thoughts of him being in prison will haunt me for years to come . . .

> ". . . As a young boy, Steven always had side jobs to earn extra money.  He got up early to going door to door asking his neighbors if they needed help mowing their lawns…Steven eventually enrolled in college and managed to pay for his education without even asking his father or I for help.  My son made this dream come true all on his own . . .

> " . . .Another example is how Steven stepped up when my 25 year marriage abruptly ended.  My husband . . . left our family to be with another woman. . .I knew nothing how the outside world operated. . . Steven moved back to Texas to be closer to the family and to help me how to figure out how to embrace this drastic change . . he had to help me with my finances, creating a resume, teaching me how to type, and even how to use the internet.  Most importantly, he helped me emotionally . . .

3

" . . .I know my son has made a life changing mistake . . . He is remorseful and takes full responsibility for his actions.  I realize you are the expert on sentencing but as a Mother I'm pleading for any mercy you can grant us. . ."

(See **Exhibit B** for full letter).

Steven's younger brothers and sister tell their own perspective on the family dysfunction and Steven's role as the oldest sibling.  **Christian Bacino**, one of his younger brothers, writes:

" . . .Steven has always been there for me when I needed him most.  From my parents' divorce, school, relationships, recommendations for success and general life advice, he's always been my confidant.  My life would not be the same without Steven's love and guidance. . .

" . . .When our parents separated, I was 13 and a complete mess . . . I never thought I could bounce back from such a traumatic experience.  But Steve was there every step of the way.  I am unsure where I would be now without his persistence through daily phone calls providing positive messages. . .

" . . .Steven's upbringing was extremely challenging. . . At one point in time, our father didn't speak to Steven for 8 years because Steven asked why he abandoned our family.

" . . .Even after my brother told me about the terrible crime he committed, I continue to have the utmost respect for him.  Losing him will be devastating for everyone.  I have felt my brother's remorse for his actions and I am confident he will continue to learn from this experience and will return from prison a more compassionate and selfless person. . .

(See **Exhibit C** for full letter).

Steven's younger sister, **Ariel Bacino**, writes:

" . . .[Steven] has always encouraged me to strive and excel in everything I do and keep growing in life. . . He has pushed me to keep going in school when I wanted to quit.  This year, I am applying to a four year university because of his support . . .

" . . .I am so grateful for Steven loving me unconditionally, for helping me get into school, and helping me get a car for transportation, when no one else would.  I am also thankful for our countless conversations regarding my future and giving me the

advice and encouragement . . .

" . . . I'm going to miss his influence and advice so very much. Not only will his absence affect me tremendously, it is going to be detrimental to our entire family . . . he has always pushed for our family to remain close . . .

" . . .I never thought Steven would make a mistake of this magnitude. I truly felt his remorse when he told me the news regarding his crime. He always seemed to have his life together . . .He is ready to pay the price for his actions . . Whatever his punishment may be, I know he will come out of this an even better man. . ."

(See **Exhibit D** for full letter).

**Garrett Bacino**, Steven's younger brother shares of a particularly revealing experience

of love and acceptance by his older brother, Steven:

" . . .our siblings and I have had to endure a great deal of abandonment and emotional abuse throughout most of our lives . . often times [our parents'] battles were physical and would end in more than just emotional wounds. . .

" . . .Steven would check on us often to discuss the importance of education, listen to our problems and give us brotherly advice. . .I remember him often quoting Socrates and telling us 'an unexamined life is not worth living.' Perhaps this is why I am shocked by Steven's behavior . . .

" . . .One of the toughest times of my life was my decision to come out to my family regarding my sexuality. I was scared of the repercussions as we come from a religious military family. . . Thankfully, Steven was there and was one of the first people I told. HE told me it didn't matter and he would always love me regardless of my sexual orientation. Then, he gave me a reassuring hug. Knowing he shared traditional beliefs, but still accepting me for who I am, gave me the courage to tell my parents. After coming out to our family, our father didn't speak to me for months and my mother did her best . . .

" . . .I know he [Steven] whatever it takes to get back on track and become a better person who will make the right decisions. . . I pledge to help my brother though this difficult time and do everything I can to help him build a future life. . ."

(See **Exhibit E** for full letter). Also included in the exhibits is a letter from **Fonda Bacino**,

Steven's grandmother (see **Exhibit F**).

**Jacek Prus**, who has known Steven since he was 8 years old and is a former business colleague of Steven's, writes:

> " . . . Even with his generous nature, anybody who really knows him can feel that he
> bears pain . . but I see it manifest through anxiety about his family and the future . . .
> Steven has a deep care for his family and friends. . . ."

(See **Exhibit G** attached).

### Steven's Marriage and Future Family Life

Steven's met his wife Amber Cantu Bacino, in approximately 2008 briefly but they would not meet again until 2014. They began to date and, in 2015 Amber moved to Austin to be close to Steven. This was the same week Steven was terminated from Summit Hotel for this criminal conduct. Soon thereafter, Steven disclosed to her that he had been terminated for viewing illicit material involving children yet she stayed together with Steven after several discussions. Ms. Cantu Bacino is a professional with her own career, and writes about her reaction to Steven's revelation that he was fired for viewing illicit pornography of children:

> " . . .My first reaction was to leave the relationship. How could I stay with
> a person who would do something like this? But, after much discussion, I realized
> he was a person who made a poor choice at a low point in his life. This doesn't
> excuse his actions, but it did show me this is not behavior he would typically
> exhibit. He was disgusted with his actions and scared of what would happen next . . .

> " . . . he acknowledged this was not a victimless crime, and was ready to take
> action to move forward with self improvements. . . . I am a believer that actions
> have repercussions so I set specific stipulations if our relationship was to continue
> forward . . . Steven agreed to the terms and went above and beyond . . ."

Amber writes that Steven obtained his real estate and notary license, started working as an Analyst and supplemented his income by driving for Lyft/Uber. He had to stop driving when he was indicted. He started getting help for substance abuse and cut ties with people who

could trigger his drinking.  Steven gave Amber passwords to all of his devices so she could

verify he was not accessing any type of pornographic material.  Finally, Steven took the initiative

in reconnecting with his Dad, who had not spoken to in almost ten years.  To add more gravity to

this difficult situation, Amber is now pregnant, expecting their first child in February.  She

writes:

> ". . . While we're thrilled for the blessing, we're nervous to think what it will be
> like for Steven to miss the birth of his only child and the opportunity to participate
> in his life . . . Though he made poor choices, he [Steven] is that much wiser to
> to shape our child to be a good man and go out into the world to do great things. . . .

> " . . .we'll never erase what happened, nor would we want it to.  Erasing it means
> he hasn't acknowledged his crime and learned from it.  I've seen the transformations
> Steven has made over the last two years and know there are still many positive
> things to come . . .I'm looking forward to the day when he can get back to doing what
> he does best -- being the patriarch to his family, a support system for me, and a loving
> father to our son.  Whatever you decide Steven's punishment may be, he will come
> out of this a better person. . ."

(See **Exhibit H** – attached).  Amber's parents are also supportive.  They have been married 37

years and Amber is their only child.  Ms. Cantu is a veteran of the U.S. Navy.  Armando and

Dena Cantu write:

> " . . . Steven had the courage to admit to us what he had done wrong, and expressed
> extreme regret and remorse for his actions.  He's dedicated to creating a positive life
> our daughter and their son . . . He knows how badly this has affected his family, but
> more importantly, the victims of this type of crime. . . "

(See **Exhibit I** – attached).

### Risk Assessment – Dr. Matthew Ferrara

Dr. Matthew Ferrara performed a risk assessment and evaluation of Mr. Bacino on September 27, 2017.  His report is attached as **Exhibit J**.  Dr. Ferrara writes that Mr. Bacino is a low risk to repeat a sexual crime with an important caveat.  Dr. Ferrara states:

> " . . .If he maintains his sobriety, he will likely do well on community Supervision . . ."  (page 3). . .

Dr. Ferrara also writes about Steven's response when he was asked if anyone is harmed when he looked at sexual images of children.  Steven stated:

> ". . .Everyone.  The children were hurt.  They were harmed because I played a role in victimizing them by creating a demand for this kind of filth. . . Psychologically, that could damage them for the rest of their lives.  My family got hurt (He cries.) They had pure shock and embarrassment . .  My friends got hurt.  My company got harmed. . .  My wife, I put her in a poor situation before we got married.  I came clean about it and she still married me. . .  My child has been hurt.  I won't be there for him (He cries) . . .

(See **Exhibit J** – Attached)

Though Dr. Ferrara's report suggests community supervision as an appropriate sentence, Mr. Bacino knows that this is not realistic in the context of this case before this Court.  However, he is hopeful that all of the information provided might permit the Court to consider a variance from the Sentencing Guidelines.

8

## **Mitigating Factors – A Request for Sentence Below Guideline Range**

### **A) Post-Booker Sentencing Factors**

In U.S. v. Booker, 125 S.Ct. 738 (2005), the Supreme Court held that the sentencing guidelines are only advisory. The other factors set forth in 18 U.S.C. 3553 must also be considered in fashioning the appropriate sentence. *See Booker*, 125 S.Ct. at 790. These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care of other correctional treatment in an effective manner;
>
> (3) the kinds of sentences available;
>
> (4) any pertinent policy statements issued by the Sentencing Commission;
>
> (5) the need to avoid unwarranted sentence disparities; and
>
> (6) the need to provide restitution to any victims.

In U.S. v. Myers, 353 F.Supp.2d 1026 (S.D.Iowa 2005), the court stated that in cases in which a defendant's history and character are positive, consideration of all of the Section 3553 factors might call for a sentence outside the guideline range. 18 U.S.C. Section 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in Booker 125 S.Ct. at 758. In United States v. Hadash, 408 F.3d 1080 (8th Cir. 2005), the court made it clear that a reasonable

9

departure from the guidelines is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure.  Finally, it is important to note that Congress has directed that a district court "shall impose a sentence **sufficient, but not greater than necessary,** to comply with [the purposes of sentencing].  18 U.S.C. 3553(a) (emphasis added).

### B) <u>Steven's Request For Mitigation & Variance from Guidelines</u>

Steven's Guidelines in this case are high for a person with no criminal history because of the nature of the this crime and the enhancements assessed due to the nature of the videos and images he possessed.  Mr. Bacino acknowledges his guilt fully and also wishes to make progress in his substance treatment through the RDAP program.  The extraordinary demonstration of remorse and commitment to rehabilitate by Steven are unusual for a case of this nature.  One of the big issues in these cases is that this material is secretive and kept secret from anyone around the person viewing it.  Steven has demonstrated that he will no longer live a secret life and has surrounded himself with those who love him the most knowing what type of crime he committed. It is that network of loving family that will see him through the coming months and years, which may not be easy for him.

Steven, through the undersigned counsel, requests this court deviate from the Guidelines as permitted under the law given the following factors:

a) The extraordinary degree of remorse and responsibility demonstrated;
b) Steven's initiative to get help for his alcohol problems;
c) The work ethic of Steven before and after this crime was discovered;
d) The lack of any significant criminal history;
e) His education, employability and future ability to contribute to society;
f) His family and the upcoming birth of his son;

g)   The data from Dr. Ferrara showing that he is a low risk to reoffend; and
h)   The high level of support surrounding Jake, minimizing chances of recidivism.

In short, Steven Bacino respectfully requests that this Court consider a sentence which is significantly lower than the Guideline Range given the application of the statutory factors to the facts of this case, the history and characteristics of Steven and the impact upon his family.  The demonstration of responsibility by this Defendant and his family is extraordinary.  The undersigned counsel believes that these factors outweigh any societal interest in a lengthy prison sentence in this case.

Respectfully submitted,


/s/ Samuel E. Bassett
Samuel E. Bassett
Minton, Burton, Bassett & Collins
1100 Guadalupe
Austin, Texas   78701
(512) 476-4873 Telephone
(512) 479-8315 Facsimile
State Bar No. 01894100
Attorney for Steven Bacino


**Certificate of Service**

By affixing my signature above, I, Samuel E. Bassett, hereby certify that a true and correct copy of Steven Bacino's Memorandum in Aid of Sentencing has been sent to Mr. Grant Sparks, Assistant United States Attorney, U.S. Attorney's Office for the Western District of Texas, Austin Division, on the 31st day of October, 2017, and to the U.S. Probation Office, attention Russ Wiedenmeyer on that same date.

# Exhibit A

The Honorable Judge Sam Sparks
United States District Court Judge
U.S. District Court
Western District of Texas
U.S. District Clerk's Office
501 West Fifth Street, Suite 1100
Austin, Texas 78701


Dear Judge Sam Sparks,

My name is Steven Lee Bacino. I am writing you with regards to the shame, disgrace, and humiliation I feel regarding my despicable actions and current position I have put myself in. I am now a convicted felon and a broken man. My aspirations to be a good man, son, brother, friend, husband, and soon to be father are potentially destroyed or, at the very least, put on hold due to my egregious acts that I am solely responsible for. I took it upon myself to search for illicit images and videos of children, and played a role in the victimization of children, and I perpetuated a disgraceful and evil industry. I now realize this is not a victimless crime and I will spend the rest of my life living with the regret and pain that accompany my transgressions. I accept the role I have put myself in and will live with the consequences of my poor choices. This letter is not in any way a ploy to minimize my role regarding my acts. Rather, I hope you consider the information provided as part of your deliberations as you decide the appropriate sanctions for my case. Lastly, I want to be respectful of the courts time and will keep my personal narrative as brief as possible.

My parents, Jeffery and Sheila Bacino, met in Okinawa, Japan when they were young. My father was serving in the U.S. Air Force, and my mother's father was a drill sergeant for the Marine Corps. A little over year later I was born on Marine Corp Base Camp Lejeune in Jacksonville, N.C. on February 23, 1982. Growing up as a child, my younger brother, Garrett Bacino and I witnessed many tumultuous and sometimes violent interactions between my parents. My father has an addictive personality that led him to abuse drugs and alcohol, develop a gambling addiction, and steered him into multiple infidelities which we witnessed as children. My mother took it upon herself to move out of our home, on several occasions, and leave my father. They were generally an unhappy union and most special occasions ended in verbal and sometimes physical warfare. I could see the exhaustion in my mother's eyes, a good woman who made a poor choice in a partner and tried everything in her power to provide support for her husband and children.

By the time I was nine my father gave up alcohol and drugs, but still continued his infidelities and other misconducts.  He started a pest control business that later allowed us to live in an upper-middle class lifestyle that I am still thankful for. Even though there was some financial progress in our lives, he still didn't know how to be a father. He would confide in me what most adults would never say to children.

During middle school and high school I was a very busy kid, and always had an entrepreneurial spirit. While other kids were out playing, I was washing cars and mowing lawns for the neighborhood to earn money. I was an avid reader and collected baseball cards, and even researched and catalogued the value of my collection a few times a year. I held a job since the age of 15, played a variety sports, and wrote for my high school paper. In 2000, I graduated from J. Frank Dobie High School. Unsure of my future, I went to community college and continued to work before being accepted by Texas A&M University. Given our family's financial situation, I knew I would be responsible for paying my way through school, so

I applied for a server position at Christopher's World Grille. The general manager refused to hire me on two different occasions due to my age (the average server age was 28 and I was only 20). By the third interview, I had memorized their 110-bottle wine list as well as their entire dinner menu. I was hired on the spot and never had to worry about making rent or paying for books for the rest of my schooling. During these years, I met life-long friends and my first girlfriend, who I dated for three years. I was starting to figure things out and knew I had the perseverance and fortitude to be successful in life. In 2006, I graduated with a Bachelor's of Science degree in Interdisciplinary Studies with a focus on Business and Technological Management.

Shortly after graduation I moved to San Diego, California to work with my uncle, Birger "Greg" Bacino. My uncle was a large contributor to my professional and moral upbringing. He was the closest person I had to a role model, and I always looked up to him in virtually every facet of life. To me, has was the patriarch of our entire family and treated me with the utmost love and respect. Greg was a licensed attorney who owned Premier Medical Systems, Inc. (a medical management group), Siena Pacific, LLC (a property development company), as well as a few other subsidiaries.

After my studies, I realized I was fascinated with developing tangible assets and adding value to residential and commercial properties. I started working at Sienna Pacific, LLC managing financials, meeting with contractors and processing estimates. Siena Pacific went on to build Roxbury Estates which offered some of the most prestigious properties in Ranch Santa Fe, California. While working with Greg I was introduced to Mayor Giuliani, T. Boone Pickens, and Andre Agassi. It was a truly amazing experience I will never forget.

Near the end of 2007, the U.S. financial crisis hit the real estate market and started the downturn, especially in California. At the time, I thought this was why most of my uncle's businesses were failing. However, years later I would learn that my uncle and his partner had actually been federally indicted for a worker's compensation scheme. They cooperated with prosecutors which led to a plea of "no contest" to felony charges of earning a profit for referring clients to a network of preferred doctors. I was shocked by this news and couldn't believe my uncle was never honest about what actually happened.

During this time, my father started having an affair with a client and left my mother for good. He left my two younger siblings, Christian and Ariel Bacino, and 25 years of marriage to live a new life with a new woman. This destroyed my mother and I did everything in my power to sustain her mental and emotional wellbeing. I was 1,500 miles away from Texas which made me feel helpless. To top it off, my father stopped talking to me after I confronted him regarding his infidelity. Additionally, he only contributed the minimum amount of court-required child support and would only communicate with my mother via written notes. While I have unconditional love for my father, I consider a man unwilling to accept responsibility, a person unable to learn from mistakes, an absentee father, and an abuser of God's selfless gifts in life.

I had made the decision to move to back to Texas and Austin was always a city I envisioned as a permanent place for me to live. This would allow me to be close to my younger brother Garrett, who was attending The University of Texas, as well as remain closer to my mother and two younger siblings. In January of 2008, I started working for Wentwood Capital Advisors as a Valuations Associate. I was responsible for underwriting and purchasing equity interests for Section 42 multi-family housing portfolios. I hired and managed a small team and started my journey building a career in real estate finance.

Four years later I was introduced to Dan Hansen at Summit Hotel Properties and decided to take a new role. Making the move from private equity multi-family to procuring hotels for a large publicly traded company was like "drinking from a firehose". I managed and assisted in a myriad of processes for the procurement of hotels that delivered great results for our investors. Though I was achieving professional success, I continued abusing alcohol.  It was a part of my unraveling at Summit. I would show up hungover or even drunk many times during a given week. I did my best to mask it by taking anti-hangover pills, hydrating as much as possible the night before, taking multivitamins in the morning and dousing myself in cologne after a hot shower. I honestly became a professional at it. However, with deception, the truth comes out.

My personal life also endured a multitude of additional stressors.  As I mentioned before, my father married the woman who he left my mother for, and my younger siblings were caught in the middle of an awkward divorce. I hadn't spoken to my father in eight years, and during that time he never tried to reach out to me. Then, in 2015, I received the news that my uncle had been killed in a tragic plane crash. He was only 56 years old and left behind three children, all under the age of 17.  Though my uncle had made some poor choices, he was still my mentor, father figure and friend, so his death left a huge gap in my life.

It was during this time that I began to live a life of excess. I started abusing alcohol, partying vigorously with my rugby club, and not caring about the repercussions. I was not focused on my relationship with Christ, even though I was still going to church and meeting with my men's group. I would preach to others how to live, but could not deliver on my sermon. I knew what it took to live a clean life, but would not pay the price to have one. I was living a complete and utter lie and I refused to seek the real help I needed. I had plenty of friends and healthy relationships with long-term girlfriends, but I could not get past the things that tormented me. Instead of asking for help, I remained stubborn and refused. When I did see a counselor, I would sit back and find ways to minimize. I chose to live selfishly instead of grasping how my actions would affect others. What I didn't realize is that I was perpetuating my problems, not making them better. I should have listened to myself when I heard the warning phrases of "it's only...", "I know I shouldn't, but...", and "it can't hurt if." My underlying problem was that I only focused on the gain rather than the consequences. I blinded myself and saw only the potential rewards to gain rather than the potential pitfalls that my poor decisions would lead to.

I met my future wife, Amber Cantu, nearly 10 years ago through our mutual friend who was also my college buddy. It was a very brief meeting and we were both in long-term relationships, so we didn't think much of our encounter. We wouldn't meet again until six years later, in April 2014. She was living in Dallas at the time while I was still living in Austin, so we began our long-distance courtship.

Amber moved to Austin in July 2015, the same week I was dismissed from Summit Hotel Properties due to my crime. Regardless of the potential consequences, I decided to tell her the real reason for my release from Summit, and explained to her my crime of viewing illicit material involving children. As one can imagine, Amber found my actions nothing short of shocking and even considered leaving me. We both were unsure of what to do and very apprehensive on how to proceed forward. During this moment, in a confused state, I considered leaving the country. I had plenty of cash and complete freedom to leave all this behind. However, I realized in a moment of clarity, that I would be doing exactly what my father did - abandoning my loved ones only to protect myself and not taking responsibility for my actions. I decided to face the consequences of my actions and move forward.  Ultimately, Amber and I decided to stay together a build a life.  For the next two years, I had to work hard to earn back her trust, and I was willing to put in the work. Looking back, I should have also hired counsel to investigate my potential

indictment. In hindsight, it seems like an obvious step, but I chose to bury my head in the sand and move forward with the things I could control. But, had we done this, we may not have experienced the joys of our engagement, a blossoming marriage, and the preparation for the future birth of our son, Brooks. Ultimately, I have no regrets on how we handled our situation, I only regret my conscious decision to commit an atrocious crime that I am now willing to pay for.

After I committed my crime and lost my job, I continued to abuse alcohol. However, I wanted my relationship with Amber to work, so during the last 18 months I made small changes to limit my exposure. These changes included retiring from my rugby club and eliminating the time I spent with unhealthy individuals. I also stopped drinking liquor. But these were all just small solutions to a bigger problem. In the end, I knew I had to make more than just small changes if I was going to get better.

Before my arrest, I sought the help of Bill Bruzy, a certified substance abuse counselor at the Austin Men's Center. Mr. Bruzy has helped me identify stress, anxiety, and isolation as the main triggers that have led to my chemical dependency. He has also helped me identify stressors caused by my family life and helped me understand how much of that was out of my control. Additionally, I took it upon myself to attend local AA meetings. I was initially against the idea, but after attending a few gatherings and receiving my first chip, I quickly realized the benefits. I am now looking for a sponsor to help me through the remainder of my limited freedom. I have found counseling, listening to others, and discussing my personal issues to be therapeutic as well as a stress reliever. I'm proud to say I've been sober for the last three weeks and I approach conquering my substance abuse 24 hours at a time.

As painful as this letter was to write, I found putting my deepest thoughts on paper to be therapeutic. It has created another layer of introspection I desperately needed in my life for quite some time.

In conclusion, I want to reiterate in full disclosure, I accept sole responsibility for my deplorable acts that led to my criminal indictment. I am prepared to pay the consequences of my actions and I will use any time I must serve to better myself and learn the tools to deal with real life struggles and temptations. I vow to never put myself, my family, or anyone in this terrible situation again.

Thank you for your time and consideration regarding this letter.

Sincerest Regards,


Steven Bacino

# Exhibit B

October 5, 2017

Dear Judge Sam Sparks,

My name is Sheila Bacino. I'm the mother of Steven Bacino and I am writing to you with a broken heart as my worst nightmare come true. I have been left dumbfounded by what he has done and the thoughts of him being in prison will haunt me for years to come. I may never know exactly how he has put himself in this predicament, but I know that he will have his family and friends to be there to support him the best we can.

His father, Jeff Bacino and I were very young parents when we had Steven. Jeff was 20 and I was 17 years old when we were blessed with such a beautiful and easy to raise baby boy. Even though Jeff worked hard to put food on the table and a roof over our heads, he really didn't know how to be a father to his children. Being a good role model and setting proper examples was something he was not qualified for. Regardless, we did our best to offer love and guidance they would need to excel in life.

As a young boy, Steven always had side jobs to earn extra money. He got up early to going door to door asking his neighbors if they needed help mowing their lawns and offering his services for an assortment of odd jobs. His developing work ethic created discipline that followed him as he grew into a young man. Steven always aspired to have a productive and meaningful life for himself and his future family. He knew at a young age if he wanted anything in life he would have to work hard to achieve it. Steven eventually enrolled in college and managed to pay for his education without even asking his father or I for help. My son made this dream come true all on his own.

I find my son to be an understanding and compassionate person. I believe Steven went through a lot by not having a positive role model in his early life, but somehow found a way to persevere. For example, he helped my father, Jim Harrison who was a pastor and missionary, by assisting with planning for his evangelical trips with Disciples Outreach International to Cuba. Steven was scheduled to go with him to South America before his abrupt passing in 2012. My father had a lot of hope for my son and saw his warm nature as well as his personal struggles.

Another example is how Steven stepped up in 2006 when my twenty-five-year-old marriage abruptly ended. My husband was done being married to me and left our family to be with another woman. I was devastated by what was taking place. I was a child when I met my husband and, outside of rearing children and trying to be the best wife I could be, I knew nothing else of how the outside world operated. During this time, Steven was living in California and pleaded with his father not to leave me and seek marriage counseling. Regardless of his pleas, he left our family stranded. Not long after, Steven moved back to Texas to be closer to the family and to help me figure out how to embrace this drastic change. As embarrassing as it sounds, he had to help me with my finances, creating a resume, teaching me how to type, and even how to use the internet. Most importantly, he helped me emotionally. He has been with me every step of the way. But that's the type of person my son is – kind, loving, respectful and loyal.

I know my son has made a life changing mistake and, after talking with him, I know he understands the devastating effects it has on his victims. He is remorseful and takes full responsibility for his actions. I realize only you are the expert on sentencing, but as a Mother I'm pleading for any mercy you can grant us.  Thank you for your consideration.

Sincerest Regards,


Sheila Bacino

713-391-4650

# Exhibit C

October 6, 2017

Dear Honorable Judge Sam Sparks,

My name is Christian Birger Bacino. I am the younger brother of Steven Bacino. Steven and I grew up in the same household with our two siblings (Garrett and Ariel) and our parents (Jeff and Sheila). Steven has always been and always will be a positive force in my life, as well for everyone else in the family. I want to briefly share with you who my brother truly is as a person, what he had to experience and what he means to our family.

Steven is the guy that wants to make people better in every single way possible. Steven has always been there for me when I needed him most. From my parents' divorce, school, relationships, recommendations for success, and general life advice, he's always been my confidant. It truly helps having someone so knowledgeable and that has had as many life experiences as my brother. My life would not be the same without Steven's love and guidance.

When our parents separated, I was 13 and a complete mess. It was as if the walls of depression were closing in on me. During class, I was the kid that sat in the corner, didn't speak to anyone, performed poorly in school. I never thought I could bounce back from such a traumatic experience. But Steven was there every step of the way. I am unsure where I would be now without his persistence through daily phone calls providing positive messages. Steven has a special gift of connecting with people and their problems. He has always reached out to those who needed the help, going above and beyond without ever asking for anything in return.

Steven's upbringing was extremely challenging. He had to deal with our father's mental and physical abuse while battling alcoholism. At one point in time, our father didn't speak to Steven for eight years because Steven simply asked why he abandoned our family. It took the death of our uncle Greg Bacino to end the eight years that was lost between them. The untimely death of our uncle hit Steven the hardest because he viewed Greg not only as a mentor and best friend, but also as a father. I realized this at Greg's funeral when Steven delivered a powerful eulogy in front of an audience of over 300. Steven's message opened in an uproar of laughter and finished with tears of admiration for our uncle.

Even after my brother told me about the terrible crime he committed, I continue to have the upmost respect for him. Losing him will be devastating for everyone. I have felt my brother's remorse for his actions and I am confident that he will continue to learn from this experience and will return from prison a more compassionate and selfless person.

Respectfully, I ask during sentencing that you consider Steven as the man our family knows and loves. Thank you for your time in reading this letter.

Kindest Regards,

Christian Bacino
c.bacino92@gmail.com

# Exhibit D

September 26, 2017

Dear Judge Sparks,

My name is Ariel Bacino. I am Steven Bacino's younger sister. I am 21 years old, the youngest of four, and the only female. My brothers mean the world to me. Although they're all equally incredible, my brother Steven holds a very special place in my heart.

Being the youngest, I tend to look up to all three of my siblings, but especially Steven. He carries the most wisdom, and I've always respected and welcomed his opinions and advice. He has always encouraged me to strive and excel in everything I do and keep growing in life. He has kept on me about my studies and pushed me to continue going to school when I wanted to quit. This year I am applying to a four-year university because of his support. I am so grateful for Steven loving me unconditionally, for helping me get into school, and helping me get a car for transportation when no one else would. I am also thankful for our countless conversations regarding my future and giving me the advice and encouragement I so desperately needed. Most importantly, I thank my brother for always being there for our mother after the demise of her 25 year marriage. He was there for our mother in every way, even more so than the rest of us. Even though I am blessed to have a father that loves me, I cannot say he has always been there for me since the divorce, whereas Steven has. Of course, sometimes it's a little overbearing having your older brother pick up the slack and play the father role. There were times I used to wish he'd back off a bit, but now I'm going to miss his influence and advice so very much. Not only will his absence affect me tremendously, it is going to be detrimental to our entire family. Steven is an amazing human being and the backbone of our family. While we all have busy lives, he has always pushed for our family to remain close and that has allowed us to grow closer.

I believe we all make mistakes, but I never thought Steven would make a mistake of this magnitude. I truly felt his remorse when he told me the news regarding his crime. He always seemed to have his life together. Steven has apologized so many times, and tries to remain positive with kind gestures and words. He has handled this situation with far more bravery and responsibility than I would ever be able to. He has promised every one of us that he will never put us in this situation again, and I believe him.

With everything coming to a head, I'm happy to say he's still is optimistic and hopeful for his future. He is ready to pay the price for his actions and move forward from this. Whatever his punishment may be, I know he will come out of this an even better man. We love him very much, and now it is our turn to be there for him and support him in any way he needs us to.

Thank you, Your Honor, for reading my letter and for your consideration.

Sincerely,

Ariel Bacino
713-261-2561

# Exhibit E

October 2, 2017

Dear Judge Sparks,

My name is Garrett Bacino, I am Steven Bacino's younger brother and the second oldest child in our family of four children. I am a graduate of The University of Texas and first time business owner. I was overwhelmed by the news when Steven told me about his crime and I am tremendously saddened by what he has done. I am shocked that a person with such high moral values could do something like this.

To give you some family background, our siblings and I have had to endure a great deal of abandonment and emotional abuse throughout most of our lives. Our parents argued and bickered constantly over my father's infidelity and poor handling of finances. Often times their battles were physical and would end in more than just emotional wounds. Because of our father's indiscretions, our mother was responsible for most of our upbringing. Unfortunately, we considered this normal behavior and something most families had to contend with. It wasn't until I became an adult that I realized we had a much more difficult upbringing than most children.

Our parents divorced while I was attending university during my freshman year. This was hard for Steven and I, as it tore apart what was left of a struggling family unit. However, I know the divorce was toughest on Steven. I believe he felt that keeping the family together, staying strong for our mother and taking on a fatherly role for Christian and Ariel was his new duty. Steven would check on us often to discuss the importance of education, listen to our problems and always gave brotherly advice. Steven was a philosopher of sorts, always challenging us to think outside the box. I remember him often quoting Socrates and telling us "an unexamined life is not worth living." Perhaps this is why I am shocked by Steven's behavior and the current position he put himself in.

One of the toughest times in my life was my decision to come out to my family regarding my sexuality. I was nineteen and scared of the repercussions as we come from a religious military family. Due to our beliefs, and knowing how our father teased and made fun of people who were different, being gay was not an acceptable proposition. Thankfully, Steven was there and was one of the first people I told. He told me it didn't matter and he would always love me regardless of my sexual orientation. Then he gave me a reassuring hug. Knowing he shared traditional beliefs, but still accepting me for who I am, gave me the courage to tell my parents. After coming out to our family, our father didn't speak to me for months and my mother did her best to support me during this time. All I wanted was acceptance from my peers, family and friends, so I was glad to have my brother there when I needed him most.

Steven has played an integral role in my life, and realizing he will not be here crushes me. We are not just brothers, but close friends. Friends who support and confide in each other. After speaking with Steven, I realize he is going through the most difficult time in his life. He knows how his decisions will severely affect our family, wife and future child. I know he will do whatever it takes to get back on track and become a better person who will make the right decisions. I so confident in his ability to do great things that I hope he will consider my offer to build a small business together once all this has passed.

I pledge to help my brother through this difficult time and do everything I can to help him build a future life.  Thank you very much for your time.


Sincerely,

Garrett Bacino
281-508-1482
gbacinoht@gmail.com

# Exhibit F

October 3, 2017

Honorable Judge Sparks,

I am writing this to you on behalf of my grandson Steven Bacino. He and I have talked about what his and I know he is very sorry for his actions and what he is putting our family through. The embarrassment it is causing us is almost unbearable. But I know Steven will survive this and I believe he has already learned a lot from his crime and has started turning his life around. I feel in my heart, from here on out, he will walk down the right path and be a productive and law abiding member of society.

I have many fond memories of Steven, and have always thought of him as kind and considerate of others, a love for family and friends. I'm proud of his accomplishments and who he is as a person.

I know Steven has made some poor choices, but last year when he and Amber were married, I must say he could not have made a better choice. We all love her, and now they are going to be parents, making me a great grandmother, and I couldn't be more excited.

Your Honor, my prayer is that you will make a fair decision for my grandson.  Thank you for your time.

Sincerely,

Fonda Bacino

# Exhibit G

Jacek Prus

2212 San Gabriel St. Apt #30
Austin, TX 78705
(832) 244-6653
JacekPrus1@gmail.com

October 4, 2017

To the honorable Judge Sparks,

I've known Steven Bacino since I was eight years old. He is my best friend's oldest brother. When I was a young kid Steven was ten years my senior and larger than life. My first memory of him was the thought "this is someone I want to be like". That simple. Even at that young age he was focused, generous and had big plans for his life. He gave us advice, let us spend time with him at college, shared his love of music and always acted as an overall good role model.

Over the years, I saw Steven from time to time, but it wasn't until that past few years that we really reconnected. Before the start of my MBA program, I was pursuing a start-up business with a colleague. We reached out to Steven for help. He was patient with our lack of business experience and walked us through the "ins and outs" of creating a start-up.  H educated us pro-formas, competitive analysis, identifying customers and managing suppliers. He even invited us to his home to discuss our long term goals and plans, outside of just business. He represented us as our commercial real estate agent and fought hard to find us a good location and deal. During this process, Steven was charitable with his time even though he was very busy.  He gave us words of encouragement for our efforts and, most of all, was a stabilizing reference point to give us the space to learn.

Even with his generous nature, anybody who really knows him can feel that he bears pain. Where this pain comes from I do not know, but I see it manifest through anxiety about his family and the future.  This is why he may come off as paternal or uptight, but I think it really stems from continuously trying to make the best of a hard situation. Steven has a deep care for his family and friends, and wants them to do their best, even if it means he will be disliked for putting a fire under their butts.  He sacrifices being liked for guiding his family in the right direction.  This selfless act captures his integrity and commitment to help others.

Motivated, pained, generous and honest are the best words I can use to describe Steven Bacino. Thank you Judge Sparks for taking the time to read this letter. I hope it is helpful in assessing Steven's character.

Sincerely yours,

Jacek Prus

# Exhibit H

September 30, 2017

Dear Honorable Judge Sparks,

My name is Amber Cantu Bacino, Steven Bacino's wife. We've known each other for four years and have been married for about a year. I consider him my best friend and true confidant, so I will never fully understand how a lapse in judgement of this magnitude happened. However, I am encouraged by his attitude to keep his life moving forward, so hope this letter will provide insight into his character.

Over the course of our relationship I've learned a lot about Steven as a person. He is the oldest of four children, Garrett, Christian, and Ariel Bacino. He grew up in a middle-class family in the Houston area, played league level rugby, had a business degree from Texas A&M, and had a successful job as a Commercial Real Estate Analyst. While everything looked good from the outside, I learned there were significant family issues that still impact him today. Steven's parents had him at a very early age (his mother was only 16), so they were basically children raising children. His father has an addictive personality, so whether it be alcohol, drugs, women, or gambling, he always had a vice. His mother was dedicated to keeping the family together, so even when times were rough, she stuck it out. His parents were married for 25 years until 2006, when Steven's father began having an affair. His father came home one day and told Steven's mother it was over and he was moving out. As you can imagine, she completely broke down. Steven and his eldest brother Garrett were already of adult age and out of the house, but his younger siblings, Christian and Ariel, were only 10 and 12. Steven's mother immediately called him in a frantic state. She had helped Seven's father build a successful business doing administrative and bookkeeping work, but had never held a full time job on her own. Steven's father owned the house and was the main breadwinner, and now she was left totally on her own. His father basically picked up and started a new life with his mistress, offering little support to Steven's mother beyond the court ordered child support.

When Steven confronted his father on his actions, he denied the affair and shut Steven out altogether, saying it wasn't his place to interfere. His mother was falling apart and his younger siblings were suffering the consequences. He had to step in. It was at this point Steven became the patriarch of the family and cut off all communications with his father. He even moved back to Houston from California to help provide support for his mother because it was the right thing to do. Though I found the story disheartening, it told me a lot about Steven's character. He not only held his father accountable for his actions, but sacrificed his own time as a care-free single man in his mid-20s to be there for the family.

Steven's disconnect with his father left a huge hole in his life, and to fill this hole, he began building a stronger relationship with his uncle. They had always been close, but Steven now looked to him for the advice, support, and wisdom his father could no longer provide. His uncle lived in California, but Steven always made a point to visit as much as possible. Throughout our relationship, he always spoke very highly of his uncle and was excited to have us meet. Unfortunately, I never got that opportunity. In 2015, we got a call that Steven's uncle was in a tragic plane accident. He was making a work trip in a single engine Cessna and reports indicate the pilot was intoxicated. The plane crashed and both the pilot and his uncle died. Steven was devastated. His uncle was a prominent father figure for the last ten years and now he was gone. Steven was depressed, angry, and felt helpless because there was nothing he could do to change the circumstances.

Shortly after, another tragic event occurred. Steven was fired from his job for viewing inappropriate material on his work laptop. This is when this case began. Two agents visited his house to discuss what was found. However, they never gave any indication of what to expect or what would happen next. Though it was hard for him, Steven was honest with me regarding the details of why he was fired. My first reaction was to leave the relationship. How could I stay with a person who would do something like this?  But, after much discussion, I realized he was just a person who made a poor choice at a low point in his life. This doesn't excuse his actions, but it did show me this is not behavior he would typically exhibit. He was disgusted with his actions and scared of what would happen next. Out of fear of the unknown, Steven thought about leaving the country. He had a passport, enough money for living expenses and nothing to

lose. He could start his life over and leave this mess behind. But he soon realized he'd be running away from his problems and denying accountability for what he'd done. He'd have to live with that for the rest of his life. Instead, he acknowledged this was not a victimless crime, and was ready to take action to move forward with self-improvements.

At this point, we had been dating for about a year. We were both willing to put in the effort to stay together, but it required work. It was time for Steven to rebuild trust and show he could take accountability for his mistakes. I am a believer that all actions have repercussions, so I set specific stipulations if our relationship was to continue forward:

1. He had to find a new job and contribute to monthly expenses
2. He had to get rid of the toxic relationships, specifically friends that were a negative influence with drinking, partying, etc.
3. He had to get involved with church and a support group
4. Under no circumstances would he access any type of inappropriate or graphic material

Steven agreed to the terms and even went above and beyond:

1. He studied hard and got his real estate and notary licenses
2. He started working at Novogradac as an Analyst
3. He supplemented his income by driving for Lyft/Uber part time, which he had to stop when he was indicted
4. He began working with ex-business colleagues to start a hotel investment fund, which he had to exit when he was indicted
5. He put significant distance between him and individuals who were a negative influence, and specifically quit playing for the rugby club
6. We started regularly attending Austin Ridge Bible Church and both became involved in community events and support groups
7. He started attending AA meetings
8. He stopped all access of inappropriate or graphic material. He even gave me the passwords to his phone/laptop so I could openly check browsing history, text messages, etc.
9. He reconnected with his father who he had not spoken to in almost ten years

Steven showed me that although he had made mistakes, he was able to learn and use them as lessons on how to be a better husband, son, and Christian. This experience has given him the ability to say "I wasn't living my life the way I should have been, but I can change that. Not only through changing my actions, but holding myself accountable every day."

We've now been married for about year and found out we're expecting our first child in February 2018. While we're thrilled for the blessing, we're nervous to think what it will be like for Steven to miss the birth of his only child and the opportunity to participate in his life. Before we knew about the indictment, we discussed the best way to raise our son. Because I work full time with Dell, we decided Steven would continue his real estate venture part time and help with child care coverage. I now fear how I will juggle a demanding job and caring for our child as a single parent. It also saddens me that Steven will not have the opportunity to pass along his knowledge and learnings to our son. Though he made poor choices, he is that much wiser to shape our child to be a good man and go out into the world to do great things. No matter his formal punishment, nothing will be as devastating as missing out on these key moments. These are once in a lifetime events that can't be bought, substituted or negotiated.

While I'm anxious to put this whole event behind us, we'll never erase what happened, nor would we want it to. Erasing it means he hasn't acknowledged his crime and learned from it. I've seen the transformations Steven has made over the last two years and know there are still many positive things to come. I'm looking forward to the day when he can get back to doing what he does best – being the patriarch

to his family, a support system for me, and a loving father to our son. Whatever you decide Steven's punishment may be, he will come out of this a better person. Thank you Judge Sparks for your time and consideration.

Sincerely and respectfully,

Amber Cantu
(214) 801-4144

# Exhibit I

September 23, 2017

RE:  Steven Bacino

Dear Judge Sparks,

We are Armando and Dena Cantu, the parents of Amber Cantu-Bacino, Steven's wife. We have been married for 37 years and Amber is our only child. I have worked for CPS Energy in San Antonio for the past 33 years, and before that served in the US Navy. For the past 31 years my wife has been a Personal Assistant for the President and CEO of a small corporation located in Fair Oaks Ranch, Texas.

As our daughter grew older (she is now 36) we began to give up on our dream that she would have her own family and that we would ever experience the joys of being grandparents. Then, about four years ago, Amber met Steven. From the very beginning it seemed like they were destined to be together. She lived in Dallas and he was in Austin. Despite the many miles apart, they commuted back and forth to see each other for more than a year. They spent almost every weekend, holiday, vacation, and any free time that they could manage together. When Steven proposed to Amber, we were elated. Last December, they were married. Our daughter chose a very fine man to be her husband and we couldn't be more proud of the man Amber married. A man we love and trust to take care of our grandchild who is due to enter this world in February.

Steven is the oldest of four children (Garrett, Christian, and Ariel) and has always played more of a father figure role than a big brother role. Since their parent's divorce, Steven became the rock of his family. His mother has shared many stories about how he stepped in to help during her divorce, which was a very difficult time for both her and the children. He has always been the one encouraging his siblings to finish college, helping them through financial difficulties, providing advice, or just an ear to listen to them when they were in trouble. After meeting and speaking to his family members and many of his lifelong friends, we were amazed how important he is to all of them.

Steven has always been a very honest, caring, and level headed young man. We have never had any reason to doubt his integrity. We have been on vacations together, attended family functions and reunions. Admittedly, we were shocked to learn of the charges brought against him. It seems so out of character for a person who is responsible for the well-being of so many others. But, I also know there are circumstances where good people make bad choices and get caught up in something that is not expected from them. Steven had the courage to admit to us what he had done wrong, and has expressed extreme regret and remorse for his actions. Yet, through all this adversity, he's managed to maintain a positive attitude about the future. He's dedicated to creating a positive life for our daughter and their son. He knows how badly this has affected his family, but more importantly, the victims of this type of crime. He has been going above and beyond to prove to us and to Amber that he is not that person deep down, and he is ashamed of his actions.

We don't believe Steven is a threat to our family, or to the public. We wouldn't allow him to be in our lives if we thought differently. His admirable qualities and support he provides family members and friends are above and bryond. That is the Steven we know and love. We have no doubt that Steve is remorseful for his actions and has taken responsibility. He is ready to move forward, accept his sentence, and come out of this an even better person. We will continue to support and believe in him through these trying times.

Thank you for your time, Judge Sparks.


Respectfully,


Armando and Dena Cantu

Armando Cantu:  (210) 422-3376
Dena Cantu:  (210) 771-7218
Email: ar.cantu@sbcglobal.net

# Exhibit J

**Matthew L. Ferrara, Ph.D.**
Licensed Sex Offender Treatment Provider
Clinical and Forensic Psychology
2500 West William Cannon Drive
Suite 703 · Austin, TX · 78745
Tele: 512-708-0502 · Fax: 512-708-0557
mferraraphd@outlook.com

September 29, 2017

Samuel E. Bassett
1100 Guadalupe Street
Austin, TX 78701

Dear Mr. Bassett,

Per your request, on 09-27-17 I performed a risk assessment of Steven Bacino (DOB: 02-23-82). The risk assessment consisted of psychological testing, review of records, and face to face contact with Mr. Bacino. I conducted the risk assessment based upon the assumption that the current allegations are true. By assuming that the current allegations were true, I could avoid relying on Mr. Bacino's self-report for his charged conduct. Furthermore, by assuming the official record of Mr. Bacino's criminal history was accurate, I could determine Mr. Bacino's upper limit for risk. In addition to conducting a risk assessment, I also assessed Mr. Bacino's prognosis for benefiting from sex offender treatment. The following summarizes my current opinions regarding Mr. Bacino.

1. **Current Matter:** Based upon the available information, Mr. Bacino is charged with possession of child pornography. The records indicate that Mr. Bacino possessed sexual images and videos of prepubescent children, mostly females, between the ages of 6 and 14. Reportedly, some of the websites accessed by Mr. Bacino included titles such as "*underage erotica*," "*girls-preteen*," and "*watch my 11yo video*." Mr. Bacino reportedly possessed sexual images of children displaying their genitals or involved in sexual acts with adult men. Reportedly, the sexual acts included oral, anal, and vaginal intercourse. Reportedly, one video depicted a dog licking the vagina of a 6 to 8-year-old female. Reportedly, 280 images and 61 videos of child pornography were found on Mr. Bacino's computer.

2. **Risk Assessment for Future Sexual Misconduct:** Risk is the likelihood that a person will exhibit a specific behavior in the future. Mr. Bacino's risk for future sexual misconduct was assessed by use of the Matrix-2000, an actuarial risk assessment device. The Matrix 2000 has been subjected to rigorous empirical examination and it has been found to have accuracy and validity that is superior to clinical judgment. The Matrix 2000 is widely accepted by mental health professionals as the optimal risk assessment tool for determining risk of sexual reoffense for individuals whose only sexual offense entails the use of child pornography.

Mr. Bacino was rated as a low risk on the Matrix 2000. In fact, Mr. Bacino was rated as not possessing any risk factors that are associated with sexual recidivism.

The available scientific research indicates that on average, 4.6% of child pornographers commit a new sexual offense, with 2% committing a new contact sex offense and 3.4% committing a new child pornography offense. In other words, the research shows that 95 out

of 100 child pornographers do not commit a new sexual offense. Since Mr. Bacino is rated as a low risk on the Matrix 2000, his risk for future sexual offenses is probably less than 5%.

Mr. Bacino cannot be diagnosed as an exclusive pedophile. An exclusive pedophile is an individual who only has sexual urges or sexual behaviors with a prepubescent child. Mr. Bacino has a history of sexual interest in and sexual contact with adult females.

The fact that Mr. Bacino is not an exclusive pedophile has three important implications for future risk. First, Mr. Bacino is a situational offender, not a preferential offender, which means that his sexual acting out was largely the result of poor judgment. Second, unlike a preferential offender, Mr. Bacino does not have a lifetime of sexualizing children. Third, Mr. Bacino is amenable to treatment, which means his already low risk for future sexual offenses can be further reduced, if he successfully completes sex offender treatment.

Mr. Bacino cannot be classified as a sexual predator. Mr. Bacino would have to have two or more sentencings for a sexually violent offense, if he were to be eligible for classification as a sexual predator. If Mr. Bacino is convicted of possessing child pornography, he will not have even one sentencing for a sexually violent offense because possession of child pornography is not categorized as a sexually violent offense. Therefore, Mr. Bacino cannot be classified as a sexual predator.

3. **Risk for Problems while on Probation**: Mr. Bacino's risk for problems while on community supervision was assessed by use of the Level of Service Inventory – Revised, an actuarial risk assessment device. The LSI-R is composed of 54 items that are associated with risk for legal problems and technical violations while an individual is on community supervision. The LSI-R was originally published in the 1970's and underwent a revision in the 1990's. The LSI-R has appeared in peer reviewed studies across the globe and it is widely accepted by community supervision departments, as well as forensic and correctional psychologists.

Mr. Bacino was awarded fourteen (14) points on the LSI-R, which places him in the medium risk range. Most of Mr. Bacino's points on the LSI-R come from his problems with substance abuse. In fact, 8 of 14 points on Mr. Bacino's LSI-R are directly related to his substance use, or choice of friends and associates with substance abuse problems. Mr. Bacino said that since the time of his arrest, he has refrained from using alcohol and it has been years since he has used illegal drugs. Mr. Bacino said that he has begun substance abuse treatment with a counselor. Should Mr. Bacino be able to maintain sobriety, his risk for problems while on supervision will be greatly reduced.

4. **Prognosis**: Prognosis is defined as the ability to use therapy to make significant changes in one's life. Mr. Bacino's prognosis is good. He demonstrated the ability to hold himself accountable for his behavior. He also demonstrated good empathy for others. Below are Mr. Bacino's response to questions about accountability and empathy for others.

When asked if he could explain why it was wrong for him to look at sexual pictures of children, Mr. Bacino said, "It is wrong because they are children. I believe children do not understand it. I played a role in the victimization of children. It disgusts me. I helped perpetuate an evil industry, a disgusting industry. They are helpless. Parents are there to protect children. Adults should protect children. The children are not wise in the way of our understanding, as adults. I feel as if they need to be protected."

When asked if anyone is harmed when he looked at sexual images of children, Mr. Bacino said, "Everyone. The children were hurt. They were harmed because I played a role in victimizing them by creating a demand for this kind of filth. Their videos are shared online. I viewed those videos. Psychologically, that could damage them for the rest of their lives. My

family got hurt. (He cries.) They had pure shock and embarrassment, the fact I'm going to prison, and the fact this is public knowledge. My friends got hurt for the same reasons. My company got harmed. I embarrassed them by getting the FBI involved in my case. They had trust in me. My wife, I put her in a poor situation before we got married. I came clean about it and she still married me. We are expecting a child. My child has been hurt. I won't be there for him. (He cries.)"

Overall, it would appear that Mr. Bacino has a good foundation for making progress in sex offender treatment. It is important to consider the impact that incarceration would have upon an individual with a good prognosis. An incarceration of more than six months would have a deleterious impact upon Mr. Bacino's psychological characteristics, i.e., after six months in prison, prisoners begin to build their self-esteem around their ability to survive as a prison inmate. When this individual is released from prison, they do not do as well in treatment because of their altered self-image.

5. **Overall Opinion:** There is a small likelihood that Mr. Bacino will have future sexual offenses. If he maintains sobriety, he will likely do well on community supervision. He has a good prognosis for sex offender treatment. Given his risk and prognosis, one option open for consideration would be to place Mr. Bacino probation and require him to follow the specialized terms of probation for sex offenders and actively participate in and successfully complete sex offender treatment.

Dr. Ferrara's findings include such things as his opinions, judgments, diagnoses, predictions, and conclusions. The findings contained in this report are based upon Dr. Ferrara's professionally derived knowledge, including his knowledge of relevant scientific studies. Dr. Ferrara has the appropriate education, training, and experience to offer the opinions contained in this report. The issues addressed in this report, and the techniques used to address these issues, are within Dr. Ferrara's competence. All information that provides the basis for the findings is included in this report.

Dr. Ferrara is familiar with the assessment techniques utilized as the basis of this report. Dr. Ferrara administered, scored, interpreted and utilized assessment techniques, tests, and instruments in the manner and purpose for which there is a professional or scientific basis. No findings are based upon tests or measures that are obsolete or not useful for the current purpose.

The findings in this report are conservative and do not extrapolate beyond the available information. Dr. Ferrara offers the findings in this report based upon reasonable psychological certainty. Findings that are not based upon reasonable psychological certainty were not included in this report.

Dr. Ferrara does not offer any diagnoses in this report. Dr. Ferrara is not offering any predictions in this report. This report does contain a risk assessment. A risk assessment is not a prediction. A risk assessment is the assessment of a psychological factor (i.e., risk) that the individual has in the present. While a risk assessment can be used to make statements about the future, the risk assessment itself is a statement about the individual's present status.

There are no test factors or characteristics of the individual assessed that negatively impact Dr. Ferrara's findings. Dr. Ferrara does not have any significant reservations about the accuracy or limitations of the findings in this report.

Dr. Ferrara is not offering an opinion about the psychological characteristics of any individual he did not examine. If there are comments in this report about the psychological characteristics of anyone Dr. Ferrara did not examine, those comments were offered by the

individual Dr. Ferrara evaluated or derived from the materials reviewed and Dr. Ferrara is merely reporting these comments without endorsing them.

By signing and dating this document, Dr. Ferrara verifies that the opinions and findings in this report are reliable and valid. The opinions and findings in this report are based upon available information and techniques employed. The information and techniques are sufficient to provide appropriate substantiation for the findings. Should additional relevant information become available, Dr. Ferrara would review this information and amend his report accordingly, at the request of the referral source.

Sincerely,

Signed Electronically: /s/ *Matthew L. Ferrara, Ph.D.*

### Methodology

- <u>Contact with Mr. Bacino</u>:
  - ➢ Clinical Interview
  - ➢ Social History
  - ➢ Sexual History
  - ➢ Mental Status Exam
- <u>Risk Assessment:</u>
  - ➢ Matrix-2000
  - ➢ The Level of Service Inventory-Revised (LSI-R)
- <u>Psychological Testing:</u>
  - ➢ Personality Assessment Inventory (PAI)
- <u>Psychosexual Testing</u>
  - ➢ Sexual Attitude Questionnaire
- <u>Records Reviewed</u>
  - ➢ US District Court Presentence Investigation Report Docket No. 0542 1:17CR00287-001

**Sexual Reoffense Risk Assessment**

The Matrix-2000 is an actuarial risk assessment device that is designed to assess an individual's risk for future sexual crimes and violent crimes. The Matrix-2000 was subjected to rigorous scientific testing, which included the study of sex offenders who were in the community for a period of time up to nineteen years. The Matrix-2000 has good reliability (i.e., consistently measures risk accurately) and validity (i.e., scores correlate very well with future behavior). The Matrix-2000 is widely accepted as the best risk assessment tool when the only arrestable sexual misconduct is the possession of child pornography.

Mr. Bacino was rated as a LOW RISK on the Matrix 2000. The available scientific research indicates that on average, 4.6% of child pornographers commit a new sexual offense, with 2% committing a new contact sex offense and 3.4% committing a new child pornography offense. In other words, the research shows that 95 out of 100 child pornographers do not commit a new sexual offense. Since Mr. Bacino is rated as a LOW RISK on the Matrix 2000, his risk for future sexual offenses is probably less than 5%.

| | Factors that Apply to Mr. Bacino | Score |
|---|---|---|
| **Age** <br> • Eighteen to twenty-four = 2 points <br> • Twenty-five to thirty-four = 1 point <br> • Thirty-five or older = 0 points | • Age 35 = 0 points | 0 |
| **Appearances for Sexual Offenses Committed after Being Punished** <br> • Zero to one = 0 points <br> • Two = 1 point <br> • Three or four = 2 points <br> • Five or more = 3 points | • No known risk factors | 0 |
| **Appearance for Nonsexual Offenses** <br> • Four or less: 0 points <br> • Five or more: 1 point | • No known risk factors | 0 |
| **Preliminary Risk Category** <br> • **Low** = 0 points <br> • **Medium** = 1 to 2 points <br> • **High** = 3 to 4 points <br> • **Very High** = 5 to 6 points | | Low Risk |

| **Aggravating Factors:**<br>• Male victim<br>• Stranger victim<br>• Single (never in marital type relationship)<br>• Noncontact sexual offense | No known risk factors | 0 |
|---|---|---|
| **Final Risk Category**<br>• Raise the risk category one level if the individual has two or three of the aggravating factors<br>• Raise the risk category two levels if all four aggravating factors apply to the individual | | Low Risk |

### Risk Assessment for Problems while on Probation

The Level of Service Inventory - Revised is an actuarial risk assessment device designed to determine the risk of law violations and technical violations by probationers and paroles. The components of the LSI-R include criminal history, education, employment, family history, marital history, accommodations, leisure practices, type of companions, substance abuse, mental health, and attitudes. The LSI-R generates a numeric risk rating: minimum (0 to 7), medium (8 to 15) and maximum (16 and up).

Mr. Bacino was awarded fourteen (14) points on the LSI-R, which places him in the medium risk range. Most of Mr. Bacino's points on the LSI-R come from his problems with substance abuse. In fact, 8 of 14 points on Mr. Bacino's LSI-R are directly related to his substance use, or choice of friends and associates with substance abuse problems. Mr. Bacino said that since the time of his arrest, he has refrained from using alcohol and it has been years since he has used illegal drugs. Mr. Bacino said that he has begun substance abuse treatment with a counselor. Should Mr. Bacino be able to maintain sobriety, his risk for problems while on supervision will be greatly reduced.

| Findings that resulted in Mr. Bacino obtaining points on the **Criminal History Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Criminal History Factor** |
|---|---|
| <ul><li>He has past involvement in the legal system, including three arrests for Driving with License Suspended and two citations for speeding, in 2012 and 2015</li><li>In 2001, at the age of 19, Mr. Bacino was put on deferred adjudication for Theft (of coins from work)</li><li>In 2004, at the age of 22, Mr. Bacino served a term of supervision, for Evading Arrest</li></ul> | <ul><li>Not counting traffic violations, he doesn't have three or more convictions</li><li>He doesn't have three or more charges/counts for his instant offense</li><li>He was not arrested under age sixteen</li><li>He has never been incarcerated upon conviction of a crime</li><li>He doesn't have a history of escape from a correctional placement or facility</li><li>He has never been punished for institutional misconduct</li><li>He has never had a prior community supervision revoked</li><li>He does not have an official record of violence</li></ul> |
| Findings that resulted in Mr. Bacino obtaining points on the **Employment Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Employment Factor** |
| <ul><li>Mr. Bacino was fired when his employer discovered his use of child pornography</li></ul> | <ul><li>He is employed</li><li>He is not frequently unemployed</li><li>Never unemployed for a continuous 12-month period</li></ul> |

| Findings that resulted in Mr. Bacino obtaining points on the **Education Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Education Factor** |
|---|---|
| • No known risk factors | • He completed the tenth grade<br>• He completed high school<br>• He was never suspended or expelled while in school |
| Findings that resulted in Mr. Bacino obtaining points on the **Work Performance Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Work Performance Factor** |
| • No known risk factors | • He does his job well<br>• He gets along with coworkers<br>• He gets along with his boss/supervisor |
| Findings that resulted in Mr. Bacino obtaining points on the **Financial Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Financial Factor** |
| • As a result of being fired from his job, he is having financial problems | • He is not receiving social assistance |
| Findings that resulted in Mr. Bacino obtaining points on the **Family & Marriage (Significant Other) Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Family & Marriage (Significant Other) Factor** |
| • He said that during his childhood, he felt emotionally abandoned by his father | • No problems in current primary relationship<br>• He has a good relationship with his siblings and extend family<br>• No one in his current family or family of origin has ever been arrested |
| Findings that resulted in Mr. Bacino obtaining points on the **Living Accommodations Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Living Accommodations Factor** |
| • No known risk factors | • He has satisfactory living arrangements<br>• He hasn't changed his address three times or more in the last twelve months<br>• He doesn't live in a high crime neighborhood |
| Findings that resulted in Mr. Bacino obtaining points on the **Leisure & Recreation Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Leisure & Recreation Factor** |
| • No known risk factors | • He is an active member of a prosocial group<br>• He makes good use of his leisure time |

| Findings that resulted in Mr. Bacino obtaining points on the **Companionship Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Companionship Factor** |
|---|---|
| • At least one friend has been arrested for an alcohol related offense<br>• At least one acquaintance has been arrested for an alcohol related offense | • He is not socially isolated<br>• He has many acquaintances who are not criminals<br>• He has many friends who are not criminals |
| Findings that resulted in Mr. Bacino obtaining points on the **Alcohol & Drug Problem Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Alcohol & Drug Problem Factor** |
| • In the past, he had a problem with alcohol use<br>• On one occasion, his drug use led to a problem<br>• He reports that his alcohol use has negatively impacted his work performance<br>• His evading arrest charge came while he was reportedly using psychedelic mushrooms<br>• He has experienced hangovers | • He doesn't have an alcohol abuse problem now<br>• He doesn't currently have a drug abuse problem<br>• His substance use hasn't led to family or marital problems<br>• His substance use hasn't caused medical problems |
| Findings that resulted in Mr. Bacino obtaining points on the **Emotional & Personal Problems Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Emotional & Personal Problems Factor** |
| • Subsequent to his arrest for his instant offense, he began seeing a counselor to address his substance use disorder | • He is not having mental health problems<br>• He is not suffering from a severe mental health problem<br>• He hasn't had mental health treatment in the past<br>• He doesn't appear to warrant mental health evaluation or treatment |
| Findings that resulted in Mr. Bacino obtaining points on the **Attitudes & Orientation Factor** | Findings that resulted in Mr. Bacino not obtaining points on the **Attitudes & Orientation Factor** |
| • No known risk factors | • He has prosocial attitudes<br>• He has conventional beliefs<br>• He believes his sentencing process and sentence are fair<br>• He is motivated to comply with supervision |

# Exhibit K



**Steven & Amber with Cantu Family**



**Amber and Steven**



**Ariel, Garrett, Sheila (Mom), Steve, Christian**